IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

RECEIVED – CLERK
U.S. DISTRICT COURT
2009 SEP 25  PM 4: 01
TX EASTERN-MARSHALL

| | |
|---|---|
| RAUL LOPEZ AND DIANA LOPEZ, INDIVIDUALLY AND AS NEXT FRIEND OF A.L., A MINOR, § § § § | |
| Plaintiffs, § § | |
| VS. § § | CIVIL ACTION NO. __2-09CV-292__ |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., CHRISTOPHER REYNOLDS, JANE HOWARD MARTIN, ERIC TAIRA, DIAN OGILVIE, § § § § § § § § | |
| Defendants. § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE OF SAID COURT:**

COMES NOW, RAUL LOPEZ AND DIANA LOPEZ, INDIVIDUALLY AND AS NEXT FRIEND OF A.L., A MINOR (hereinafter referred to as "Plaintiffs"), and respectfully file this Original Complaint against TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., CHRISTOPHER REYNOLDS, JANE HOWARD MARTIN, ERIC TAIRA, DIAN OGILVIE (hereinafter referred to as "Defendant"), and in support hereof would state and show the following:

### A. Parties

1. Plaintiffs are the natural parents of A.L., a minor and reside in Arlington, Tarrant County, Texas. Plaintiffs' case was filed in the Eastern District of Texas on September 9, 2002. Cause No. 2:02-CV-210-TJW.

## B. Defendants

2. Defendant, TOYOTA MOTOR CORPORATION ("TMC") is, and at all relevant times was, a Japanese corporation with its headquarters in Toyota City, Aichi Prefecture, Japan. Defendant Toyota Motor Corporation is a foreign Corporation doing business in Texas, and service of process upon this Defendant may be had by serving its president, Shoichiro Toyoda, at 1 Toyota-Cho, Toyota, 0471, Japan.

3. Defendant, TOYOTA MOTOR SALES, U.S.A., INC. ("TMS") is, and at all relevant times was, a California corporation with its principal place of business and/or headquarters in Los Angeles County, California. TMS is a wholly owned subsidiary of TMC. TMS is affiliated with other entities such as TOYOTA NORTH AMERICA MOTOR CORP. ("TMA") and TOYOTA TECHNICAL CENTER U.S.A. INC. ("TTC"), now known as TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC. ("TEMA"). TMC, TMS, TMA, TEMA, and TTC sometimes are referred to herein as "Toyota Entities." Defendant Toyota Motor Sales, U.S.A., Inc. is a foreign Corporation doing business in Texas, and service of process upon this Defendant may be had by serving its registered agent CT Corporation System at 350 N. St. Paul Street, Dallas, TX 78701.

4. Defendant Christopher Reynolds ("REYNOLDS") is, and at all relevant times was, a resident of Los Angeles County, California. REYNOLDS is the Vice President and General Counsel of TMS. REYNOLDS was and continues to be the immediate supervisor of all managing counsel in the Legal Services Group at TMS. As the Managing Counsel for TMS, REYNOLDS is fully and completely responsible for the acts, actions, omissions, conduct, agreements and decisions that managing counsel make in managing litigation. Defendant Christopher Reynolds is an individual, and service of process upon this Defendant may be had by serving him at TMS, U.S.A., Inc. at 19001 South Western Ave., Dept. WC11, Torrance, California 90509.

5  Jane Howard Martin ("MARTIN") is, and at all relevant times was, a resident of Los Angeles County, California. MARTIN is the Assistant General Counsel in the Legal Services Group of TMS. MARTIN is, and at all relevant times was, responsible for directing, coordinating, and approving the conduct of outside counsel engaged by TMS, and jointly managing and participating with outside counsel litigation in which TMS is engaged. Defendant Jane Howard Martin is an individual, and service of process upon this Defendant may be had by serving her at TMS, U.S.A., Inc. at 19001 South Western Ave., Dept. WC11, Torrance, California 90509.

6.  Defendant Eric Taira ("TAIRA") is the Assistant General Counsel for TMS and was the immediate supervisor of Dimitrios Biller (BILLER) during the time period in which BILLER was employed by TMS. Upon information and belief, TAIRA resides in Los Angeles County, California. Defendant Eric Taira is an individual, and service of process upon this Defendant may be had by serving her at TMS, U.S.A., Inc at 19001 South Western Ave., Dept. WC11, Torrance, California 90509.

7.  Defendant Dian Ogilvie ("OGILVIE") was at the time Dimitrios Biller (BILLER) worked at TMS the Senior Vice-President and General Counsel for TMS. OGILVIE had the same duties and responsibilities as REYNOLDS when she worked at TMS. Upon information and belief, OGILVIE resides in Los Angeles County, California. Defendant Dian Ogilvie is an individual, and service of process upon this Defendant may be had by serving her at TMS, U.S.A., Inc at 19001 South Western Ave., Dept. WC11, Torrance, California 90509

### C. Jurisdiction

8.   This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332. The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

### D. Recently Uncovered Facts

9.   Plaintiffs incorporate the Complaint with attachments filed by Dimitrios Biller (BILLER) against Defendants. See Exhibit "A".

10.   Plaintiffs incorporate the 23 page memo filed by Dimitrios Biller (BILLER) against Defendants. See Exhibit "B".

11.   According to Biller a former in-house attorney for Defendant TMS, Defendants "TMC", its United States subsidiary "TMS", and the individually named Defendants, have conspired, and continue to conspire, to unlawfully withhold evidence from Plaintiffs and obstruct justice in lawsuits filed in the United States against TMC. Many of the Plaintiffs in these lawsuits sustained catastrophic and fatal injuries in accidents involving Toyota vehicles. Plaintiffs in this action include RAUL LOPEZ AND DIANA LOPEZ, INDIVIDUALLY AND AS NEXT FRIEND OF A.L., A MINOR.

12.   BILLER, the former National Managing Counsel in charge of TMC's National Rollover Program, became aware of Defendant's conspiracy to conceal, withhold, and destroy evidence and information, and obstruct justice, during his employment at TMS. As Toyota's in-house counsel in charge of managing some of the very cases in which TMC was concealing evidence, BILLER was in a unique position to know the relevance of the evidence and information that was concealed in the cases in which it was requested by plaintiffs in discovery or required to be produced in mandatory disclosures. As TMC's managing counsel in those cases, BILLER was ethically and legally obligated to turn over the evidence that Defendants had been concealing and withholding, and which it continues to conceal and withhold.

13      BILLER repeatedly confronted the individually named Defendants about the need to turn over the evidence TMC was concealing and withholding, and repeatedly was told by the individually named Defendants, that TMC would not comply with its legal duty to do so Despite TMC's resistance, BILLER persisted in his efforts to convince TMC, TMS and the individually named Defendants to have TMC meet its ethical and legal obligations to turn over the evidence TMC was concealing and withholding in pending cases around the country.

14.     When it became clear to TMC, TMS and the individually named Defendants that BILLER could not be dissuaded in his insistence, TMC, TMS and the individually named Defendants made every effort to prevent BILLER from turning over, and even preserving, the damaging evidence TMC so desperately sought to conceal. BILLER was subjected to intimidation, harassment, and an uncertain future, both at TMS and elsewhere, as a result of his efforts to comply with the legal and ethical obligations to turn over clearly discoverable material.

15.     TMC's campaign of intimidation and harassment of BILLER in the months prior to, and years following, his forced resignation from TMS are part of TMC's calculated conspiracy to prevent the disclosure of damaging evidence that TMC has been concealing and withholding for years from plaintiffs, the judicial system, the United States National Highway Traffic Safety Administration ("NHTSA"), and the American public.

16.     Given his expertise with E-discovery and discovery of ESI, and his awareness of changes in the law governing the same, shortly after being employed by TMS, BILLER advised his immediate supervisor, TAIRA, that TMS and TMC were ill-prepared to address E-discovery and ESI issues. Moreover, during October, 2003, BILLER made a presentation at TMC's Japan headquarters to show TMC's senior management how TMC and the Toyota Entities, including, TMS, were ill-prepared to address

E-discovery and ESI issues. BILLER encouraged the implementation of a strategy and plan to address the E-discovery and ESI shortcomings of TMC, TMS and other Toyota entities.

17. Between 2004 and 2007, BILLER attempted to conduct and complete investigations at TEMA, TMA, and TMC that he had initiated efforts to search, collect, preserve, review, and produce in product liability litigation. TAIRA and TMC made every effort to stop, prevent, and delay the completion of these investigations by BILLER. After one investigation, TAIRA and TMC instructed outside counsel to "destroy" the ESI, which included documents and information that was collected at TEMA related to the design, engineering, testing and evaluation of vehicles sold in the United States. In the second investigation BILLER initiated at TEMA, TAIRA and TMC conspired to stop, prevent, and delay the completion of BILLER's investigation as a result, TEMA was allowed to destroy relevant information and documents that discussed an internal standard for head protection in rollovers. In other words, there had to be a distance of 0.55 millimeters between the dummies' heads and the crushed roof. TMC never produced this data in any product liability litigation. In fact, TMC did not even inform BILLER and/or TMS's outside counsel of this internal standard and test. TMC destroyed this data in late 2005 or early 2006. This data was relevant in numerous roll over and roof crush cases spanning a period of over 20 years.

18. In addition to his duties regarding discovery issues, BILLER also handled litigation for TMS. For example, during February, 2005, BILLER was Managing Counsel for TMS in a case called Hunsberger v. Toyota, which was venued in United States Federal District Court in Mississippi.

19. In Hunsberger, plaintiffs claimed that the roof structure of their 1996 Toyota 4Runner was defectively designed because it did not provide adequate roof strength to properly protect the occupants in a

foreseeable rollover accident. In February 2005, Plaintiffs' counsel took the deposition of Chris Tinto, Vice President of TMA, who testified to the existence of e-mails and ESI in which pertained to the claims at issue.

20.     TAIRA attended the deposition of Chris Tinto for BILLER because BILLER was involved in another case in Houston, Texas. TAIRA did not make any reports to BILLER about the deposition testimony of Chris Tinto despite the fact that BILLER was managing the Hunsberger case. BILLER called outside counsel and asked for a summary of the testimony. BILLER then learned that Plaintiffs' counsel, was seeking to discover e-mails and ESI from various Toyota such as TEMA, TMA, TMC, IMS, Toyota Technical Center USA. Shortly after this deposition, Mr. Turner demanded that the Toyota Entities produce the e-mails and ESI that Chris Tinto disclosed at his deposition. The requested ESI, information, and documents never were produced to the Plaintiffs in Hunsberger v. Toyota.

21.     At least since 1996, and continuing up through May 2009, NHTSA has been investigating the adequacy of FMVSS 216 and other rules governing vehicle roof strength and has been proposing changes to FMVSS 216.

22.     As part of its investigation, during August 2005, NHTSA announced proposed changes to FMVSS 216. NHTSA asked for information from manufacturers, including TMC, regarding its proposed changes. Through a legislative lobbying group, TMC and TMA each provided NHTSA with information. TMC withheld the original engineering report concluding that TMC could start manufacturing vehicles under the new standards of FMVSS 216 within the time NHTSA recommended. Instead, TMC hired another engineering firm to give a second, different opinion, and that second report was provided to NHTSA. The original report never was provided and was "buried."

23.     During May, 2006, BILLER attended an E-discovery seminar hosted by the Defense Research Institute and conducted by United States District Judge Shira Scheindlin, Southern District of New

York, the author of the <u>Zubulake</u> decisions discussed above. (During February, 2006, the <u>Federal Rules of Civil Procedure</u> were amended to incorporate the E-discovery principals set forth in the <u>Zublake</u> decisions,) BILLER prepared a written report to his superiors at TMC and TMS regarding this seminar. He received no response.

24. BILLER made numerous efforts to correct the criminal and fraudulent acts of TMC, TMS, TMA, TEMA, and the individually named Defendants they were committing in the discovery processes in product liability cases pending in United States Federal and state courts. BILLER had three separate meetings with Ogilvie ("OGILVIE") in December 2006, March 2007, and May 2007. During these meetings BILLER told OGILVIE that: (a) TMS and TMC were in the process of destroying evidence at TEMA; (b) TAIRA would not allow BILLER to complete his investigation at TEMA to insure that TMA, TEMA, and TMS's legal compliance and to preserve evidence; and (c) TMC and the TMA, TEMA, and TMS's were committing illegal acts in connection with discovery abuse and document destruction.

25. In April 2007, BILLER prepared a 23-page memorandum ("The 23-Page Memo" that is made a part of this Complaint) in response to the 2007 Performance Appraisal TAIRA wrote regarding BILLER's 2006 work performance. The 23-Page Memo detailed how the Product Liability Group was "dysfunctional" and how TAIRA was allowing and causing TMS and TMC to violate laws, obstruct justice, and commit criminal and fraudulent acts during the discovery processes in cases filed against TMC and around the United States.

26. Defendants are continuing to engage in the same pattern and practice of conspiring to conceal, withhold, and destroy evidence, and violate E-discovery laws, that Defendants committed when BILLER worked for TMS and that he attempted to stop. Defendants' conspiracy has injured, and continues to injure, Plaintiffs around the country.

### E. Justice Demands That These Plaintiffs' Cases Be Re-Opened

27. This lawsuit seeks to end the conspiracy of illegal and obstructive discovery practices by the various Defendants. The days of Defendants destroying, concealing and hiding discovery must be abolished. This type of conduct by Defendants is illegal, immoral, and unprofessional and deprives litigants of equal access. Defendants' cloak and dagger games must be terminated.

28. This lawsuit seeks to allow victims of defective, unsafe and dangerous Toyota vehicles an equal footing to the same information that TMC, TMS, TMA and TEMA have at their disposal so that their Constitutionally guaranteed right to trial can be achieved.

29. Defendants have engaged in a pattern of abuse that has made a mockery of the American legal system. The system of laws in our country requires that all parties adhere to the laws, especially when it involves discovery of harmful material. To destroy, shred, hide and shield the discovery of research testing, internal performance goals, corporate safety goals is an affront to our legal system. This type of conduct cries judicial foul, obstruction of justice.

30. Discovery abuse of this magnitude requires extensive civil penalties because victims of dangerous vehicles have been victimized yet again. Attorneys for victims rely on the discovery material to make informed decisions about the merit and value of their case. When documents are hidden or destroyed the victims' attorney has no way of accurately evaluating his case. Hiding relevant, critical and imperative information from Plaintiffs is shameful.

31. The discovery abuse that is complained of was just learned in August 2009, following an article in the Los Angeles Times newspaper. The Plaintiffs cases were all resolved before any of this earth shattering news was known. In fact, when Plaintiffs cases were all settled, Plaintiffs believed in good faith that Defendants had not destroyed or concealed any documents. Plaintiffs believed that Defendants had complied with all federal and state laws,

federal and state discovery obligations and federal and state court orders including mandatory disclosure obligations.

32. Plaintiffs have now learned that Defendants have been engaged in a pattern of discovery abuse that is tailor made for a Hollywood movie. Defendants conduct is more like a horror movie script to the victims of Toyota's products.

33. Due to Defendants' destruction and concealment of relevant, critical and pertinent documents, Plaintiffs settlements were reached by Defendants perpetuating fraud on themselves, their attorneys and the Courts that oversaw each case.

### First Cause of Action RICO

34. Each person is a person as defined by 18 U.S.C. Sec. 1961 (3).

35. Defendants constitute an enterprise within the meaning of 18 U.S.C. Sec. 1961 (4).

36. Defendants' acts constitute a pattern of racketeering activity to conceal, with hold, and destroy relevant evidence and materials in their possession, authority and control, within the meaning of 18 U.S.C. Sec. 1961 (5).

37. Defendants' are persons who comprise an enterprise which, through a racketeering activity, substantially conceals, withholds, and destroys evidence and information in the litigation and related matters, and obstructs justice in violation of 18 U.S.C. Sec. 1341 and 1343.

38. Pursuant to 18 U.S.C. Sec. 1964 (a), Plaintiffs seek an Order imposing reasonable restrictions on the future activities of Defendants in the following manner:

    1. Issue litigation holds on all documents in any form pertaining to any make, model or year platform vehicle;

2. Issue litigation holds on all documents in any form pertaining to any non-production vehicle evaluation pertaining to product liability or crashworthiness issues;

3. Issue litigation holds on all documents in any form pertaining to research projects that involve issues related to product liability or crashworthiness issues;

4. Issue litigation holds on all documents that are presently or will be subject to any type of document retention policy;

5. Issue litigation holds on all documentation and all communications sent to outside Counsel, outside experts, outside contractors

39. Pursuant to 18 U.S.C. Sec 1964 (a) Plaintiffs seek an Order imposing reasonable restrictions from any of the Defendants or controlled by any of the Defendants prohibiting any person from further destruction of any type of documents in any form pertaining to product liability or crashworthiness issues.

## Second Cause of Action RICO

40. Pursuant to 18 U.S.C. Sec. 1028, Plaintiffs seek relief related to fraud and related activities in connection with the identification of discoverable documents that were previously withheld or concealed in violation of Court orders, discovery request or mandatory disclosure obligations.

41. Pursuant to 18 U.S.C. Sec. 1341, Plaintiffs seek relief related to mail fraud in connection with the production of discoverable documents. Defendants used the mail to perpetuate fraud.

42. Pursuant to 18 U.S.C. Sec 1503, Plaintiffs seek relief related to obstruction of justice by failing to comply with mandatory disclosure requirements when they withheld or concealed in violation of Court orders, discovery request or mandatory disclosure obligations.

43. Pursuant to 18 U.S.C. Sec. 1546, Plaintiffs seek relief related to fraud and misuse of discoverable documents when they withheld or concealed in violation of Court orders, discovery request or mandatory disclosure obligations

44. Pursuant to 18 U.S.C. Sec. 1962 (b) it is unlawful for any person through a pattern of racketeering activity to maintain any interest in or control of any entity which is engaged in, or the activities of which might affect, interstate or foreign commerce.

45. Pursuant to 18 U.S.C. Sec. 1962 (c) it is unlawful for any person employed by or associated with any entity engaged in any activity which affects interstate or foreign commerce to conduct such affairs through a pattern of racketeering activity.

### Third Cause of Action Civil Conspiracy

46. Defendants have conspired to destroy, conceal or not produce documents that are clearly discoverable in product liability or crashworthiness lawsuits.

47. Defendants are sophisticated and know that their conduct violates federal and state laws, federal and state Rules of Civil Procedure, rules governing conduct of attorneys and federal and state discovery orders including mandatory disclosures rules.

48. Defendants have conspired to prevent the truth from being learned during the discovery process so that Plaintiffs and their Counsel can make informed decisions.

49. Defendants have conspired to keep litigant victims in the dark about matters that pertained directly to their case.

50. Defendants have conspired to keep litigant victims' settlement values low by not furnishing discoverable information that would increase settlement value.

### Fourth Cause of Action Fraud, Misrepresentation and Concealment

51    Defendants' pattern of deceit, fraud, conspiracy, discovery abuse and violations of discovery orders have named Plaintiffs.

52    Defendants misrepresented and concealed the truth in its document productions in each of their cases.

53.   Discovery is critical to our adversarial system. Documents that are helpful and harmful must be disclosed. To destroy or conceal harmful documents, places the opposing party at a distinct disadvantage

54.   Defendants' willful, malicious, intentional destruction and concealment of relevant, critical and pertinent documents prejudiced Plaintiffs.

55.   Defendants knew their discovery responses were false. Defendants knew the destroyed or concealed documents were material. Defendants knew that counsel for plaintiffs would rely on the destroyed or concealed documents to better understand the technical merits of his case and then make fully informed settlement evaluations. By destroying and concealing the evidence, Defendants undercut the value of the cases.

### Fifth Cause of Action FRCP 60 (b) 3

56.   Plaintiffs seek the Court to relieve the Plaintiffs from previous Final Judgments, Orders or Releases due to fraud, misrepresentation or misconduct by Defendants.

57.   Plaintiffs incorporate all previous causes of action.

### Sixth Cause of Action Violation of the Golden Rule

58.   Texas case law at the state and federal level do not require the return of the initial settlement proceeds when the underlying settlement was induced by fraud, misrepresentation, and misconduct.

59. Defendants have violated the one rule that every child in America is taught –do unto others, as you would have them do unto you.

60. Defendants certainly have no desire to have Plaintiffs destroy and conceal evidence that would assist Defendants in mounting a vigorous defense.

61. So, why would Defendants violate the Golden Rule against Plaintiffs by destroying, concealing and hiding relevant, critical and pertinent discovery materials.

### F. Damages

62. Plaintiffs seek treble damages as allowed for under the RICO statutes for each and every violation set forth.

63. Plaintiffs seek the opportunity to re-evaluate the value of each and every case after having access to the documents that should have been produced initially but were destroyed or concealed. This would include seeking all available damages for personal injuries and/or wrongful death beneficiaries.

64. Plaintiffs seek all damages as sanctions that this Court feels appropriate. Considering the magnitude of the wrong and the prejudice to each Plaintiff that Defendants' conduct has caused, Plaintiffs seek the maximum allowable sanction.

65. Plaintiffs seek all damages at law or in equity that they are entitled

66. Due to the egregious, intentional, malicious and willful nature of Defendants' fraud, conspiracy, violations of law, obstruction of justice and total lack of respect to the legal system. Plaintiffs seek exemplary damages to deter such conduct in the future.

67. Plaintiffs seek attorney's fees and costs.

### F. Prayer

68. For the reasons presented herein, Plaintiffs pray that the Defendants be cited to appear and answer, and that upon a final trial of this cause, Plaintiffs recover judgment against Defendant for:

  a. economic and non-economic damages;
  b. prejudgment and post-judgment interest beginning September 8, 2009;
  c. costs of suit; and
  d. all other relief the Court deems proper.

      Respectfully submitted,

      **The TRACY firm**

      /s/ E. Todd Tracy
      E. Todd Tracy (Lead Counsel)
      State Bar No. 20178650
      ttracy@vehiclesafetyfirm.com
      5473 Blair Road, Suite 200
      Dallas, Texas 75231
      (214) 324-9000 Phone
      (972) 387-2205 Fax

      Melissa Smith
      State Bar No. 24001351
      melissa@gillamsmithlaw.com
      Gillam Smith, LLP
      303 South Washington Avenue
      Marshall, TX 75670
      (903) 934-8450 Phone
      (903) 934-9257 Fax

      and

      Joe D. Clayton
      State Bar No. 04339000
      100 East Ferguson, Ste. 1114
      Tyler, TX 75702
      (903) 533-9288 Phone
      (903) 533-9687 Fax

      **ATTORNEY FOR ALL PLAINTIFFS**